IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

U.S. SPECIALTY INSURANCE CO. INC.,

    **Plaintiff,**

    v.

SHARRI STEELE, as executrix of the estate of Michael Tod Steele, et al.,

    **Defendants.**

Case No. 2:19-CV-02587-HLT-JPO

### MEMORANDUM AND ORDER

In this declaratory action, Plaintiff, an insurance company, seeks to establish that an airplane insurance policy it issued to Dr. Daniel Dunn is not ambiguous and limits coverage to $100,000 per person for bodily injury. Defendants,[1] the family of a passenger killed in an airplane crash, assert that the terms of the contract are ambiguous and that they are entitled to $1,000,000 in coverage. Two motions are pending before the Court: Defendants' summary-judgment motion (Doc. 26) and Plaintiff's motion for judgment on the pleadings (Doc. 28). Although the procedural posture of the two motions is different, the parties agree that this is an issue of law and do not dispute the material facts.[2] Judgment on the pleadings is therefore appropriate, and the Court takes up Plaintiff's motion. Because the Court agrees with Plaintiff that the policy is not ambiguous and

---

[1] Mrs. Dunn is also named as a defendant in this case. However, in her answer, Mrs. Dunn admits Plaintiff's allegations and requests that the Court enter judgment as requested by Plaintiff. *See* Doc. 10. Accordingly, the Court does not include Mrs. Dunn in the term "Defendants."

[2] In response to Plaintiff's motion, Defendants controvert two of Plaintiff's facts. First, Defendants assert that Plaintiff incorrectly states their state-court claims. Second, Defendants assert that Plaintiff incorrectly states that they did not respond to a settlement offer. Defendants assert that they did respond, albeit with a counter-offer. Neither of these facts—whether controverted or not—are material to resolution of the parties' dispute regarding the limits of coverage.

limits coverage to $100,000 per person for bodily injury, the Court grants Plaintiff's motion for judgment on the pleadings and denies as moot Defendants' motion for summary judgment.

**I.   BACKGROUND**[3]

On May 13, 2017, Dr. Dunn purchased an airplane insurance policy (the "Policy") from Plaintiff. He selected "Coverage DL," which provides liability insurance for bodily injury to passengers and property damage caused by operation of the airplane.[4]

During the term of the Policy, on February 22, 2018, Dr. Dunn and one passenger—Michael Tod Steele—departed in Dr. Dunn's airplane for a flight from Ulysses to Scott City, Kansas. Shortly after take-off, the airplane crashed and both men were killed.

Over a year later, in May of 2019, Defendants' counsel sent a demand letter to Plaintiff for $1,000,000, which is the amount Defendants contend they are entitled to under the Policy. Plaintiff's counsel responded with an offer of $100,000, which is the amount Plaintiff contends Defendants are entitled to under the Policy.

On August 19, 2019, Defendants filed suit against Dr. Dunn's surviving spouse, Ruth A. Dunn, in her capacity as personal representative of the estate of Dr. Dunn, in the District Court of Scott County, Kansas. Plaintiff then brought this declaratory action seeking to establish that the coverage limit is $100,000 per person for bodily injury. Doc. 1. On March 13, 2020, Defendants moved for summary judgment. Doc. 26. That same day, Plaintiff moved for judgment on the pleadings. Doc. 28. The state-court action is stayed pending this Court's declaratory judgment as to the limits of coverage under the Policy.

---

[3]   The Court accepts as true Plaintiff's well-pleaded factual allegations. As noted, the material facts are not in dispute. *See supra*, n.2.

[4]   Although not relevant to the present motion, Dr. Dunn also purchased coverage for reimbursement for passengers' medical expenses for treatment of injuries sustained while onboard the airplane.

**II.     STANDARD**

Plaintiff moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Courts evaluate motions under Rule 12(c) using the same standard that applies to motions to dismiss for failure to state a claim under Rule 12(b)(6). *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In undertaking this analysis, courts accept as true all well-pleaded allegations in the complaint, though they need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 679. A claim is plausible if it is supported by sufficient factual content to allow a court to make a reasonable inference that the defendant is liable. *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678. A complaint containing factual content that is merely consistent with liability fails to establish plausibility. *Id.*

**III.    ANALYSIS**

Plaintiff alleges that the plain language of the Policy limits coverage for bodily injury to $100,000 per person. Defendants maintain that the total amount of liability coverage available under the Policy is ambiguous and that they are therefore entitled to recover $1,000,000, less the amount of property damage and other claims previously paid. For the following reasons, the Court finds that the plain language of the relevant contract provisions is not ambiguous and limits Defendants' recovery to $100,000.

Kansas law provides that, like any other written contract, the language of an insurance policy is construed to give effect to the intention of the parties. *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992).[5] If the terms of the contract are unambiguous, a court considers only the plain language of the contract without applying rules of construction. *Osterhaus v. Toth*, 249 P.3d 888, 896 (Kan. 2011). Upon a finding of ambiguity, however, a court may look outside the contract to extrinsic or parol evidence in interpreting the contract's language. *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 298 P.3d 250, 264 (Kan. 2013).

The question of whether a written contract is ambiguous is one of law for a court. *Simpson v. City of Topeka*, 383 P.3d 165, 177 (Kan. App. 2016). "Typically, the words used in a contract should be given their common or customary meaning." *Id.* Ambiguity exists where "'the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.'" *Id.* (quoting *Raymer*, 840 P.2d at 459). Put simply, an ambiguous contract contains "'provisions or language of doubtful or conflicting meaning.'" *Id.* (quoting *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 888 (Kan. 1992)). "The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998). Because an insurer prepares its own contracts, it has a duty to make the meaning clear and, where the terms of an insurance policy are "ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Raymer*, 840 P.2d at 459. "If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured." *Id.* In construing an insurance policy, the court

---

[5] The parties agree that Kansas contract law applies to this case.

4

considers the instrument as a whole. *Iron Horse Auto, Inc. v. Lititz Mut. Ins. Co.*, 156 P.3d 1221, 1225 (Kan. 2007); *Am. Nat'l Prop. & Cas. Co. v. Sear*, 2017 WL 3970698, at *2 (D. Kan. 2017).

Here, the Court finds no ambiguity in the language of the Policy. The relevant section of the Policy is "Part 3 – Liability to Others," which in pertinent part reads:

> Coverage DL covers bodily injury to passengers and others and property damage in a combined limit of liability for each occurrence which includes a lower limit for each passenger.
>
> The most we will pay for bodily injury to each passenger is shown in Item 6DL opposite "each person." The most we will pay for all bodily injury and property damage is shown in Item 6DL opposite "each occurrence."

Doc. 29-1 at 25 (emphasis deleted).[6] The "Item 6" that this provision refers to is a table on the Policy's "Coverage Identification Page." *Id.* at 2. Under Item 6, in box DL (i.e., "Item 6DL"), opposite "each person" is "$100,000" and opposite "each occurrence" is "$1,000,000."[7] Read together, Item 6DL and Coverage DL make clear that the Policy provides up to $100,000 for bodily injury to each passenger, with a maximum total limit of $1,000,000 for all bodily injury and property damage arising out of a single occurrence. The terms of the Policy unambiguously provide for a higher "combined limit" of $1,000,000 for "each occurrence" that "includes a lower limit for each passenger" of $100,000. *Id.* at 25. Applied to this case, the maximum amount that Plaintiff must pay Defendants for Mr. Steele's bodily injury under the Policy is the "each person" limit of $100,000.[8]

---

[6] The Court refers to this provision as "Coverage DL."

[7] The Policy defines an "occurrence" as "a sudden event or repeated exposure to the same general conditions, involving the aircraft during the policy period, neither expected nor intended by you, that causes bodily injury or property damage to others during the policy period. All bodily injury or property damage resulting from the same general conditions will be considered to be caused by one occurrence." Doc. 29-1 at 21.

[8] Under the Policy, "bodily injury" includes death. Doc. 29-1 at 21.

5

Defendants assert that the last sentence of Coverage DL in Part 3 renders the Policy ambiguous because it is not expressly subject to the limit for bodily injury to each person. They assert that a reasonably prudent insured would interpret "[t]he most we will pay for all bodily injury and property damage is shown in Item 6DL opposite 'each occurrence'" to mean that if both property damage <u>and</u> bodily injury arise from the same occurrence, the most Plaintiff would pay for all claims would be $1,000,000, unrestricted by the "each person" limitation.[9] Doc. 30 at 5.

To support this argument, Defendants cite *Farm Bureau Mutual Insurance Co. v. Winters*, 806 P.2d 993 (Kan. 1991), for the proposition that when an insurance policy does not expressly subject a "per occurrence" limit to a "per person" limit, the policy is subject to conflicting interpretations and considered ambiguous. Based on *Winter*, Defendants assert that if Plaintiff intended to limit its exposure to $100,000 for each person, then it should have clearly stated that the "each occurrence" limit is "subject to the each person limit" in the last sentence of Coverage DL. Doc. 30 at 5-6.

The Court disagrees with Defendants and finds no ambiguity in the Policy. Defendants' approach is contrary to Kansas law, under which the Court must consider the relevant provisions of an insurance policy together, rather than in isolation, and give them effect. *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998); *Hernandez v. Elec. Ins. Co.*, 2015 WL 7274038, at *4 (D. Kan. 2015), *aff'd*, 659 F. App'x 500 (10th Cir. 2016). Defendants essentially ask the Court to read the last sentence of Coverage DL by itself and ignore the rest of the Policy. In context, however, Coverage DL unambiguously provides a maximum liability amount for bodily injury and property damage arising out of an occurrence and subjects this maximum amount to a lower amount for bodily injury to each person. The first sentence of Coverage DL states that it "covers bodily injury

---

[9]  Plaintiff paid $10,119.50 to a third-party for property damage caused by the crash. Doc. 32 at 4.

to passengers and others and property damage in a combined limit of liability for each occurrence which includes <u>a lower limit for each passenger</u>." Doc. 29-1 at 25 (emphasis added). The next sentence tells the reader where to find the lower limit: "The most we will pay for bodily injury to each passenger is shown in Item 6DL opposite 'each person.'" *Id.* And the final sentence informs the reader where to find the "combined limit": "The most we will pay for all bodily injury and property damage is shown in Item 6DL opposite 'each occurrence.'" *Id.* When read as whole, the Policy is not ambiguous as to the limit of bodily injury for each person, even when an occurrence also involves property damage, and the Court will not strain to create an ambiguity where there is not one. *See Ashton v. Nat'l Farmers Union Prop. & Cas. Co.*, 2012 WL 2814129, at *8 (D. Kan. 2012) (explaining that court views the contract as a whole, uses common sense, and does not strain to create ambiguity).[10]

The Court is not persuaded by Defendants' reliance on *Winter*. There, the Kansas Supreme Court determined that an insurance policy was ambiguous because it stated that the maximum coverage for bodily injury for one person in an occurrence was $100,000, but that if an occurrence involved two or more persons, the maximum bodily injury limit was $300,000. *Winters*, 806 P.2d 993. In other words, if two or more persons were injured, the contract contained a lower limit of $100,000 per person and a higher limit of up to $300,000 per occurrence for the same bodily injury. The insurance company argued that the insured could only recover the lower amount because the

---

[10] The Court's conclusion is bolstered by *U.S. Specialty Insurance Co. v. Estate of Whitaker*, 2019 WL 1521975, at *3 (E.D. Ky. 2019), in which the court construed an identical insurance policy under Kentucky law and found it unambiguous. The facts of *Whitaker* are like the present case: an airplane owner purchased Coverage DL from U.S. Specialty Insurance. The airplane crashed, killing the owner and passengers. One passenger's family sought to recover under the insurance policy. U.S. Specialty Insurance argued that the maximum amount the family could recover for the passenger's death was the per person limit of $100,000. The family argued that Coverage DL was ambiguous (albeit on different grounds than Defendants raise here) and could be construed to provide a higher limit. Rejecting their argument, the court held that Coverage DL contains no ambiguity and that the family's recovery was capped at the per person limit of $100,000.

higher "per occurrence" limit was subject to the lower "per person" limit. *Id.* at 994. The court rejected this argument, however, because the terms of the contract did not expressly subject the per occurrence limit to the per person limit and thus the two conflicting provisions could not be reconciled. *Id.* at 996. The court therefore concluded that the contract was ambiguous and construed it in favor of the insured. *Id.* at 996-97.

Here, unlike in *Winters*, there is no allegation that Coverage DL provides two different limits for the same bodily injury to one person. Rather, Defendants argue that when there is both bodily injury and property damage, the $100,000 limit per person for bodily injury no longer applies. Doc. 27 at 13. For reasons stated above, this argument is not persuasive. In addition, although it does not use the words "subject to," as Defendants would prefer, Coverage DL subjects the limit for each occurrence to the lower limit for each passenger by stating that it "covers bodily injury . . . and property damage in a combined limit of liability for each occurrence <u>which includes a lower limit for each passenger</u>." Doc. 29-1 at 25. Coverage DL does not contain the ambiguity the court found in *Winters*.

In sum, the Policy is not ambiguous and plainly limits the amount that Defendants can recover for Mr. Steele's bodily injuries to $100,000. Accordingly, the Court grants Plaintiff's motion for judgment on the pleadings.

THE COURT THEREFORE ORDERS that Plaintiff's motion (Doc. 28) is GRANTED. Defendants' motion (Doc. 26) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: May 7, 2020            /s/ *Holly L. Teeter*
                              HOLLY L. TEETER
                              UNITED STATES DISTRICT JUDGE